UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE POLYESTER STAPLE            )
ANTITRUST LITIGATION               )        MDL DOCKET NO: 3:03CV1516
_____)            ALL CASES

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL PARKDALE AND AVONDALE TO PRODUCE DOCUMENTS RELATED TO ALLEGED POLYESTER-COTTON YARN PRICE-FIXING CONSPIRACY**

**THIS MATTER** comes before the Court on Motion To Compel Plaintiffs Parkdale America, LLC and Parkdale Mills, Inc. ("Parkdale") and Plaintiff Avondale Mills, Inc. ("Avondale") to produce discovery, filed by Defendants Nan Ya Plastics Corporation, America ("Nan Ya America"), Wellman, Inc. ("Wellman"), and Arteva Specialties S.a`.r.l. d/b/a/ KoSa, now named INVISTA S.a`.r.l.; Arteva Services, S.a`.r.l.; and Koch Industries, Inc. ("KoSa").[1] (Documents #222, #223) Plaintiffs Parkdale and Avondale have both responded to Defendants' motion, Defendants submitted reply briefs, and all of the parties have now submitted supplemental filings and, in some cases, related correspondence. (Documents ##226-230; #240,#241, #245) On January 6, 2005, the United States ("Government") also filed an amicus brief under seal. (Documents #224, #225)

On January 27th and 28th of 2005, Plaintiffs Parkdale and Avondale filed Motions To Strike the Declaration of Richard T. Rapp, which was filed as an attachment to KoSa's reply brief. (3:03CV1516 / Documents #231, #232, #234 and #238; 3:03CV296 /

---

[1] The Nan Ya Defendants (Nan Ya Taiwan, Nan Ya America and Robert Bradley Dutton) recently settled claims against them with all Non-Class Plaintiffs, including Parkdale and Avondale. Although Nan Ya America has not notified the Court that it no longer seeks to compel production from Parkdale and / or Avondale, presumably this issue is moot as to these parties.

1

Document #31) KoSa opposes Plaintiffs' motions.[2]

## I. Relevant Background

These cases arise out of allegations by individual and class plaintiffs that beginning as early as 1995, and continuing at least through 2001, Defendants and their alleged co-conspirators agreed, combined and conspired with each other to fix, raise, maintain and / or stabilize the price of polyester staple and to allocate markets and / or customers for the sale of polyester staple in the United States.[3] (Consol. Am. Compl. at 2.) Plaintiffs collectively allege that as a result of Defendants' unlawful conduct and conspiracy, Plaintiffs paid artificially inflated prices for polyester staple fiber ("PSF"). Plaintiffs primarily assert that Defendants violated Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and Section 1 of the Sherman Act, 15 U.S.C. §1.

Some of the Plaintiffs in this litigation allegedly made direct purchases of PSF from the Defendants while other Plaintiffs made indirect purchases of PSF.[4] In some instances, Plaintiffs allege that they made both direct and indirect purchases. In fact, Avondale and Parkdale are considered both direct and indirect purchasers of PSF.[5] (Avondale's Second Am. Compl., ¶3) (Parkdale's Compl., ¶3, 8, 55, 63) There is yet another category of

---

[2] Wellman does not rely on the Rapp Declaration.

[3] Polyester staple is an essential raw material for many kinds of textiles and is also used to make a wide range of products.

[4] An indirect purchase of PSF may occur if Plaintiff purchased PSF from a third-party (not a Defendant in this action) or if Plaintiff purchased a product containing PSF rather than the raw material.

[5] Avondale and Parkdale seek monetary damages as indirect purchasers under state law, N.C. Gen. Stat. §75-1.1. (Avondale's Second Am. Compl., ¶¶3,80; Parkdale Compl., ¶¶63,64)

Plaintiffs in this case that claim to be indirect purchasers of PSF as a result of having purchased yarn containing PSF. Of this group, Plaintiff Springs Industries expressly alleges it purchased yarn containing PSF directly from Parkdale.[6] (Defendants' Exh. D / Springs Industries' Compl., ¶8) In addition to their prayers for relief as direct purchasers, many of these individual or non-class PSF Indirect Purchaser Plaintiffs (also direct purchasers of poly-cotton yarn) also seek redress, including monetary damages, pursuant to state law.[7]

In November 2004, Defendants first requested discovery from Plaintiffs Parkdale and Avondale related to an investigation into an alleged conspiracy to violate the antitrust laws in the spun yarn industry. Plaintiffs objected to Defendants' request. On February 11, 2004, Unifi, Inc., which along with Parkdale Mills, Inc., owns Parkdale America, LLC, issued a press release stating that "Parkdale participated in activities with competitors in the markets for open-end and air-jet cotton and polycotton yarns used in the manufacture of hosiery and other garments that may have resulted in violations of U.S. antitrust laws," and that Parkdale "voluntarily disclosed the activities to the U.S. Department of Justice Antitrust Division . . . and that DOJ has launched an investigation of the activities. . . " (Defendants' Exhibit B / Press Release, *Unifi, Inc., Equity Affiliate Informs Unifi of Pending*

---

[6] Plaintiff National Textiles allegedly made indirect purchases of PSF "in finished yarn products manufactured by certain defendants" and "purchased yarn that incorporated PSF manufactured by one or more defendants." (Defendants' Exh. E / National Textiles' Compl., ¶¶3, 8,29) WestPoint Stevens' Complaint alleges it "purchased products containing PSF from third parties during the Conspiracy period." (Defendants' Exh. F / West Point Stevens' First Am. Compl., ¶3). Russell alleges it "purchased yarn that contained PSF manufactured and sold by defendants. . ." (Defendants' Exh. G / Russell's Compl., ¶¶3, 8, 29). Dan River "purchased PSF in finished yarn products and fabric containing PSF manufactured by certain defendants . . ." (Unidentified Defendants' Exh. / Dan River's Compl., ¶¶3,8,29).

[7] The Indirect Purchaser Class does not seek monetary damages. (Delta Clothing's Am. Compl., 3:02CV503-V)

*Investigation* (Feb. 11, 2004)). The record does not reflect whether the DOJ's leniency or amnesty program has come into play relative to any potential criminal prosecution of Parkdale.[8]

According to KoSa, Avondale has received a subpoena from the Department of Justice in connection with the poly-cotton yarn ("PCY") investigation and is an "obvious focus" given its status as one of the largest open-end spun yarn spinners in North America. (2/16/05 Letter from Edward B. Davis).

In April 2004, class action suits were commenced against Parkdale and Avondale, among others, alleging violations of the antitrust laws, namely, conspiring to fix, raise, maintain or stabilize prices for open-end and air-jet cotton and polycotton yarns.[9] (Defendants' Exhibit C) These civil actions are now consolidated in the Middle District of North Carolina before The Honorable James Beaty, Jr., pursuant to the order of the Judicial Panel on Multidistrict Litigation.[10] (*See* MDL 1622 In Re Cotton Yarn Antitrust

---

[8] At least one individual, a former vice president of sales for the now defunct North Carolina-based yarn spinner company Harriet & Henderson Yarns, Inc., has agreed to enter a guilty plea in the Eastern District of North Carolina. This individual admitted participation in the alleged conspiracy to violate the antitrust laws within the spun yarn industry. (*See* Press Release, DOJ, (Feb. 10, 2005)).

[9] Polyester staple can be either spun by itself into yarn or blended with cotton and spun into yarn.

[10] In the polyester cotton yarn ("PCY") civil litigation, the Direct Purchaser Class Plaintiffs define yarn as follows:

> "Yarn" means open-end, air jet cotton and / or poly-cotton yarn, which is textured yarn utilized in connection with the manufacture of home furnishings, apparel and industrial fabrics, automotive, upholstery, hosiery, and sewing thread, and is produced through the yarn spinning process."

(Defendants' Exhibit C, ¶5 at 2.)

Litigation). The PCY conspiracy allegedly existed from approximately February 12, 2000 to April 2004. Thus, if proven, the PSF and PCY conspiracies overlapped from approximately February 12, 2000 to April 2001. Defendants assert that some of the larger manufacturer Plaintiffs in this case have claims against Parkdale and Avondale in the PCY litigation that overlap with their claims for damages in this PSF litigation. (Defendants' Exh. D)

In a previous Order, dated February 15, 2004, this Court ruled in favor of Plaintiffs in denying Defendants' request to obtain from Plaintiffs "downstream discovery" (or "downstream data"). Downstream discovery consists primarily of Plaintiffs' production costs and profit data for each end-use or product that was manufactured incorporating polyester staple. This Court noted that "Defendants do not purport to seek the information in order to oppose Plaintiffs' calculation of damages." (2/15/04 Order at 5, n.4) The Court also recognized that downstream data may be relevant as to damages claims made by Indirect Purchasers, but found Defendants' request unduly burdensome.[11] (Id. at 6.)

## II. FED. R. CIV. P. 26(b)

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . ." FED. R. CIV. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. However, discovery may be limited by the Court if it finds that, " the burden or expense of the proposed discovery outweighs its likely benefit,

---

[11] The undersigned did not reach the issue regarding Indirect Purchasers' ability to recover monetary damages under North Carolina law. (Id. at 6, n.6)

taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(iii).

### III. Analysis

#### A. Plaintiffs' Motions To Strike Affidavit Of Richard T. Rapp

Regarding Plaintiffs' motions to strike, the Court will deny Parkdale's and Avondale's motions. Rule 6(d) of the Federal Rules of Civil Procedure requires that "[w]hen a motion is supported by affidavit, the affidavit <u>shall</u> be served with the motion." FED R. CIV. P. 6(d)(*emphasis added*). However, Rule 6(d) does not preclude the filing of an affidavit in support of a reply. <u>McGinnis v. Southeast Anesthesia Associates</u>, P.A., 161 F.R.D. 41 (W.D.N.C.1995)(denying motion to strike where affidavit supported reply and striking affidavit would conflict with Rule 6(d)'s ultimate objective of resolving the motion on its merits). Notwithstanding KoSa's alleged violation of any procedural rules, namely, FED R. CIV. P. 6(d) and L.R. 7.1(B), Plaintiffs cannot demonstrate any prejudice sustained as a result of the declaration. Plaintiffs had an opportunity, via the instant motion to strike, to address their concerns. Moreover, to grant Plaintiffs' motion would be inconsistent with federal policy favoring disposition based upon the merits of the underlying issue.

#### B. Defendants' Motion To Compel Production Of Documents

Defendants' motion seeks production of materials relating to an investigation by the United States Department of Justice ("DOJ") into Parkdale's and Avondale's alleged involvement in a PCY price-fixing conspiracy.[12] Specifically, Defendants propounded the

---

[12] The United States opposes Defendants' motion to compel with respect to the documents disclosed in connection with its ongoing criminal investigation being conducted by

following discovery request to Parkdale and Avondale:

> <u>Request for Production No. 1</u>: All documents relating to any inquiry or investigation by the United States Department of Justice, any other governmental agency, federal or state, or any grand jury, relating to the pricing, distribution, purchase, or sale of open-end and / or jet cotton and / or poly-cotton yarn, or any other product manufactured by you an input of which includes polyester staple, including, but not limited to, all documents made available by you to any of these agencies, all documents you produced in response to any subpoena, informal request or otherwise, and all documents relating to any communication between you and any of these agencies.

(Defendants' Exhibit A at 4.) Thus, the nature of Defendants' request is essentially the same as the earlier request to produce downstream discovery in that PCY is an "end-use" of PSF.[13] The Court now addresses each of Defendants' legal arguments.

Defendants first contend that the information is relevant to rebut any inference that communication amongst competitors necessarily means that the parties are engaging in an illegal conspiracy. Defendants do not need to obtain documents exchanged between Parkdale and Avondale in order to establish this point as the law unequivocally requires more than "mere contacts and communications." Cooper v. Forsyth County Hosp. Auth.,

---

the Antitrust Division of the United States Justice Department within the Eastern District of North Carolina. According to the Government, compelling production of documents as requested within Defendants' motion would "compromise the integrity and secrecy of the grand jury investigation." (Gvmt.'s Amicus Brief, at 1.)

[13] In an attempt to distinguish PCY from any other end-use, Defendants suggest that, for purposes of textile applications, polyester cotton yarn is an "alternative" for polyester staple. Apparently, some of the larger textile manufacturers are capable of purchasing polyester staple and spinning their own yarn while some textile manufacturers out-source all of their yarn-spinning. (Defendant's Brief, at 3, 6.) Defendants contend that Springs and others were able to avoid the alleged PSF price increases by shifting their purchases to PCY. (Suppl. Mem. at 2.) Even so, the ability to "shift" or reduce PSF purchases to another product would merely reduce the amount of damages that particular PSF purchaser was entitled to recover as the result of any alleged overcharge for <u>actual</u> purchases. (2/15/04 Order, at 5.) The Court does not find this argument persuasive.

7

Inc., 789 F.2d 278, 281 (4th Cir.1986).

Next, to the extent Defendants characterize this request for production as necessary to their "defense" to Plaintiffs' Sherman Act claims, the Court rejects Defendants' argument. In a *per se* price fixing case under the Sherman Antitrust Act, 15 U.S.C. §1, once liability is proven, there is no affirmative defense. Hanover Shoe v. United Shoe Machinery Corp., 392 U.S. 481, 489 (1968) (direct injury or impact may be presumed in antitrust cases involving a conspiracy to fix prices or allocate customers); Illinois Brick Co. v. Illinois, 431 U.S. 720, 724-25 (1977).

Defendants further contend that the information sought is relevant to impact and damages issues. To the extent Defendants' argument relates to direct purchasers, the Court need not address this aspect of Defendants' motion because the Court's February 5, 2004 ruling adequately dealt with this contention. Notably, Defendant KoSa's affiant qualifies one of his conclusions regarding the consequences of the poly-cotton yarn conspiracy on Direct Purchasers by first stating, "**If the law permits it,** the calculation of damages for these direct customers would have to account not only for overcharges on polyester staple but also for the potential benefits these same customers derived from the coordinated price increases in polyester-cotton yarn." (Rapp Affidavit, at 6.) The law does not permit a defendant to assert a "pass-on" defense as Rapp suggests. Hanover Shoe, 392 U.S. at 489, 494 (as a general rule, a direct purchaser is injured within the meaning of Section 4 of the Clayton Act by the full amount of the overcharge paid by it notwithstanding any passing-on of the illegal overcharge to its own customers or indirect purchasers); Illinois Brick Co., 431 U.S. at 745-46 (direct purchasers are injured and able to recover the full extent of the overcharge paid by them). The information sought has no

relevance to the Direct Purchaser claims.

Defendants likewise contend that the documents they seek relate directly to the indirect purchaser claims brought by a number of Non-Class Plaintiffs. Indeed, this Court previously found that PSF end-uses (PSF products sold "downstream") only become relevant if indirect purchasers are allowed to seek monetary damages under state law. For purposes of resolving the instant motion, the Court presumes this to be the case.[14]

Having defined the potential relevance of the information sought as limited to Indirect Purchasers' damages claims, the Court now considers whether the burden or expense of the proposed discovery outweighs its likely benefit. Defendants' current request is more discrete in that Defendants seek information from only two of the Plaintiffs - Parkdale and Avondale. However, Defendants' request is also overly broad to the extent that it encompasses information regarding products that do not contain any PSF. As propounded, Defendants' request may strain Parkdale's and Avondale's resources.

---

[14] Defendants apparently concede that indirect purchasers are entitled to monetary damages under the laws of certain states. Whether indirect purchasers are entitled to monetary damages for antitrust violations in North Carolina, and the extent of damages that may be recoverable by indirect purchasers, are issues that have not been fully briefed by the parties. The current state of North Carolina law is unclear. *Compare* Hyde v. Abbott Laboratories, Inc., 123 N.C.App. 572, 473 S.E.2d 680 (1996); N.C. Gen. Stat. §75-16; Adams v. Aventis, S.A., 2003 WL 22015384 (N.C. Super. Aug. 26, 2003); and Crouch v. Crompton Corp., 2004 WL 2414027, *12 (N.C. Super. Oct. 28, 2004)("There is no definitive decision from the North Carolina Supreme Court ruling upon the issue of indirect purchaser standing in North Carolina, nor is there a clear legislative history.")

In some of the states that are deemed Illinois Brick "repealer" states, indirect purchasers are allowed to recover the full extent of the illegal overcharge just as a direct purchaser would. *Report of the Indirect Purchaser Task Force: Section of Antitrust Law American Bar Association*, 63 ANTITRUST L.J. 993 (Spring 1995). If that were the case in each of the states relevant here, the Court's analysis would be the same for both indirect and direct purchasers. In Hyde, however, the North Carolina Court of Appeals contemplated that indirect purchaser plaintiffs would be tasked with parcing out the amount of illegal overcharge that was passed on to indirect purchasers. Hyde, 123 N.C.App. at 584; Crouch, 2004 WL 2414027.

Defendants seek data regarding "any other product manufactured by you an input of which includes polyester staple." Discovery related to the passing on of any added costs from the alleged PCY conspiracy could very well be expensive and inefficient.

The Court does not have sufficient information at this time to evaluate whether the amount in controversy regarding the indirect purchaser claims at issue weighs in favor or against Defendants' request. The fact that the indirect purchaser claims are remote - twice removed from the alleged PSF conspiracy that is the subject of this litigation - leads the undersigned to believe the damages at issue may ultimately be relatively inconsequential.

In terms of the importance of the issues at stake, and the importance of the proposed discovery in resolving these issues, the Court recognizes that Defendants are entitled to challenge or rebut the amount of damages sought by indirect purchasers. As a practical matter, this presents an almost insurmountable obstacle in terms of determining what percentage of illegal pass-on is attributable to the respective alleged conspiracies. Crouch, 2004 WL 2414027, *18 ("The cost of obtaining information relevant to pass through of added costs from antitrust violations and investigating the pricing decisions made in the distribution chain is high.") For these reasons, the likely benefit of the proposed discovery is negligible at best.

Finally, it is problematic that Defendants seek to investigate issues that are not squarely before this Court but rather are the subject of proceedings before the Middle District of North Carolina. The Court is hesitant to authorize even circumscribed discovery beyond the PSF market. The Indirect Purchaser Plaintiffs have already produced some downstream discovery. (2/15/04 Order, at 6.) Defendants also assert that Avondale has

agreed to supplement its production with respect to product substitutability.[15] Nonetheless, Wellman argues that PCY *sellers* such as Parkdale and Avondale possess relevant information regarding the cause of any illegal pass-on, namely, involvement in an alleged poly-cotton yarn price-fixing conspiracy, that could not have been produced by PCY *purchasers*. This point is well taken. Nonetheless, the undersigned does not intend to conduct a "mini-trial" on the issues presented in the pending PCY litigation. For the reasons stated herein,

**IT IS HEREBY ORDERED THAT** Defendants' Motion To Compel is hereby **GRANTED in part and DENIED in part:**

1) Defendants' Motion To Compel is **GRANTED** to the extent Defendants seek documents relating to the pricing, distribution, purchase, or sale of poly-cotton yarn. In other words, Defendants will be allowed to discover information related to Avondale's and Parkdale's sales of PCY to <u>existing</u> Indirect Purchaser Plaintiffs in 3:03CV1516;

2) Defendants' Motion To Compel is hereby **DENIED** in all other respects, including Defendants request for Plaintiffs Parkdale and Avondale to produce documents related to open-end or air-jet cotton yarn, documents relating to communications between Parkdale and Avondale and "any other product manufactured by you an input of which includes polyester staple, including, but not limited to, all documents made available by you to any of these agencies, all documents you produced in response to any subpoena, information request or otherwise, and all documents relating to any communication between you and any of these agencies"; and

3) Plaintiffs' Motion To Strike is **DENIED.**

**Signed: May 6, 2005**

*Richard L. Voorhees*
Richard L. Voorhees
United States District Judge