# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| IN RE POLYESTER STAPLE ) | |
| ANTITRUST LITIGATION ) | MDL DOCKET NO: 3:03CV1516 |
| _____ ) | ALL CASES |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO COMPEL PARKDALE AND FOR SANCTIONS AND GRANTING PARKDALE'S MOTION FOR PROTECTIVE ORDER

**THIS MATTER** comes before the Court on Defendants KoSa and Wellman's Motion To Compel Parkdale Mills, Inc., and Parkdale America, LLC[1] ("Parkdale") & Motion For Sanctions, filed April 12, 2005. (Document #259) In response, on June 16, 2005, Parkdale moved for a protective order pursuant to Rule 26(e). (Document #299) These motions are now ripe for resolution by the Court.

### I. Relevant Background

In the interest of brevity, the Court only recites the facts pertaining to this discovery issue. The Court also incorporates herein by reference the facts outlined within the Court's February 5, 2004 and May 6, 2005 Orders as both of these rulings are intertwined with the issues raised by the instant motions.[2] (Documents #162, #283)

In connection with the May 6, 2005 Order involving Defendant's Motion To Compel Parkdale and Avondale, the Court became aware of contemporaneous MDL proceedings,

---

[1] The Parkdale entities consist of Parkdale Mills, Inc., and Parkdale America LLC, and as successor by merger to Magnolia Manufacturing Company.

[2] The Court's February 5, 2004 Order denied Defendant's Motion To Compel Production Of Downstream Discovery and the May 6, 2005 Order granted in part and denied in part Defendants' motion to compel Parkdale and Avondale to produce documents related to the alleged polyester-cotton yarn price fixing conspiracy.

1

consolidated in the Middle District of North Carolina before The Honorable James Beaty, Jr., that relate, albeit tangentially, to the instant case. (*See* MDL 1622 In Re Cotton Yarn Antitrust Litigation) For many reasons, this Court does not intend to allow the parties in this case to attempt to litigate issues that are squarely before Judge Beaty in MDL 1622. Nonetheless, Defendants' Motion To Compel Parkdale and Avondale was <u>granted in part</u>, requiring production of "*documents* relating to the pricing, distribution, purchase, or sale of poly-cotton yarn." The Court also expressly limited its ruling to "existing Indirect Purchaser Plaintiffs in 3:03CV1516."

Since that time, many of the individual plaintiffs who had previously asserted indirect purchaser claims with respect to poly-cotton yarn ("PCY") purchases disavowed claims and reportedly do not intend to pursue indirect purchaser claims of this type.[3] Springs Industries, Inc. ("Springs"), continues to assert that it suffered indirect damages as a result of its PCY purchases from Parkdale.

Defendants' motion to compel arises out of the March 23, 2005 deposition of James Lee Thomas, Jr. ("Thomas"), Parkdale's Rule 30(b)(6) corporate representative. During the deposition, Parkdale was represented by Attorney Stephen P. Murphy. Defendants request production of documents allegedly used during Thomas' deposition to refresh his memory and an additional Rule 30(b)(6) deposition of one or more Parkdale representatives. If successful, Defendants also seek monetary sanctions including the costs associated with conducting another deposition and costs and attorney fees

---

[3] To the extent Defendants make reference to Plaintiffs' need to "properly disavow" their indirect purchaser claims, the Court trusts the parties can resolve to do so via some means of written communication if they have not already done so.

associated with this motion.

During the June 23, 2005 Status Conference, much of which was devoted to these issues, counsel for both sides articulated reasons as to why their interpretation of the Court's May 6, 2005 Order was the better one. The parties then asked for more specific guidance as to how to proceed with discovery.

The Court first addresses the parties' questions concerning application of the Court's May 6, 2005 Order and then considers the specific bases upon which Defendants seek relief.

## II. Legal Analysis

**a. The Court's May 9, 2005 Order Denied Defendants' Motion To Compel Parkdale & Avondale Except With Respect To Production Of Documents Relating To The Pricing, Distribution, Purchase, Or Sale Of Poly-Cotton Yarn**

In previous Orders, this Court recognized Defendants' legitimate concern as to the ability to defend against the indirect purchaser claims (indirect PSF purchaser / direct PCY purchaser) under state law. In other words, the Court understands Defendants' desire to establish the PSF price Springs would have paid *absent an alleged PCY conspiracy*. Thus, the intent of the Court's May 9, 2005 Order was to provide Defendants access to the figures needed to evaluate the damages claims of the existing indirect purchasers of PSF such as Springs Industries.[4] Presuming the existence of a PCY conspiracy solely for purposes of this Order, however, the Court is not persuaded that the actual *cause* - as

---

[4] In price fixing cases, "the measure of damages in a suit by a purchaser normally is the difference between the price the purchaser paid and the price it would have paid absent the violation." ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS, Vol. I, Sec. E2b (5th ed. 2002). Theoretically, the calculation of pass-on would be measured this way as well.

opposed to the mere fact - of any illegal pass-on is germane to the defense.[5] It is this rationale that caused the Court to limit Defendants' discovery into this area to the *documents* detailing distribution, sales figures and pricing but prohibiting Defendants' inquiry regarding discussions amongst alleged PCY co-conspirators.

In terms of document production, Parkdale claims it has already produced 3,000 pages of responsive documents pursuant to the Court's May 6, 2005 Order. (6/21/05 Letter Br., at 2.) Indeed, Parkdale represented during the hearing that it provided to Defendants all "documents relating to the pricing, distribution, purchase, or sale of poly-cotton yarn." (6/23/05 Hr'g Tr., at 40.) Given the production of these documents, combined with information Defendants have already obtained from Springs, Defendants should possess the necessary information to estimate exposure to damages related to Springs' indirect purchases of PSF.[6] If at trial the jury is tasked with determining Springs' actual damages, the Court will consider allowing testimony from the parties' experts on damages. The Court will also explore the notion of employing presumptions or burden shifting schemes as some authorities suggest.

---

[5] There is little guidance available regarding the practical aspect of calculating indirect purchasers' damages. In <u>Hyde v. Abbott Laboratories, Inc.</u>, the North Carolina Court of Appeals contemplated that indirect purchaser plaintiffs would be tasked with parsing out the amount of illegal overcharge that was passed on to indirect purchasers. <u>Hyde v. Abbott Laboratories, Inc.</u>, 123 N.C.App. 572, 584, 473 S.E.2d 680 (1996); N.C. Gen. Stat. §75-16; <u>Crouch</u>, 2004 WL 2414027. In a more recent opinion, a business court wrestling with these issues identified numerous questions posed by the current state of the law in North Carolina, and the difficulties associated with proving an illegal pass-on defense. <u>Adams v. Aventis, S.A.</u>, 2003 WL 22015384 (N.C. Super. Aug. 26, 2003)(certifying the issue for interlocutory appeal).

[6] According to Parkdale, in addition to what Parkdale has provided, Defendants have already deposed Springs' corporate representative and received approximately 5,500 pages of documents from Springs detailing its purchases of PCY containing PSF. (6/21/05 Letter Brief, at 2.) Reportedly, one of the documents provided to Defendants was the long-term contract that specified in detail the pricing of PCY purchased from Parkdale by Springs. <u>Id.</u>

In the deposition context, application of the Court's ruling is understandably more difficult. Defendants ask the Court to clarify that Parkdale witnesses should be prepared to answer a "discrete" set of questions regarding any impact the alleged PCY price-fixing conspiracy had on Parkdale's sales to *existing* indirect purchaser plaintiffs (6/17/05 Letter Br., at 2-3.) Defendants identify eight (8) questions within their filing, but only five (5) of these remain at issue.[7] As stated during the status conference, questions 4-7 "are excellent examples of questions that are not permissible under the court's order because they do get into matters that are properly before Judge Beaty." (6/23/05 Hr'g Tr., at 43.) This Court then stated that "the instruction to witnesses not to answer those questions is upheld." Id. Therefore, this aspect of Defendants' motion to compel is properly denied.

Finally, in terms of further guidance, to the extent Defendants wish to ask "basic" questions about the documents that have been produced by Parkdale, such as questions that go to authenticity, Defendants must stay within the parameters already described. Questions posed that inquire about actual discussions regarding alleged price fixing in the PCY industry between Parkdale and its PCY competitors will simply not be allowed.

**b. Defendants Are Entitled To Production Of Documents Used To Refresh Parkdale's Witness' Memory**

Parkdale must produce the documents used to refresh Mr. Thomas' memory. Rule 612 of the Federal Rules of Evidence provides in part:

> "[I]f a witness uses a writing to refresh memory for the purpose of testifying, either —
>
> (1) while testifying, or

---

[7] The parties represent in their filings that only Questions 4 - 7 remain at issue. Question 3 was apparently not asked but also not expressly withdrawn.

5

(2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,

an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness."

F̲ED̲. R. E̲VID̲. 612. Rule 612 applies to deposition testimony and requires production of otherwise privileged documents. F̲ED̲. R. E̲VID̲. 30(c); United States v. Nobles, 422 U.S. 225, 232 n.6 (1975).

In this case, Parkdale's counsel produced a document during the deposition of Mr. Thomas for the purpose of refreshing the witness' recollection about a PSF price. (Thomas Dep., at 218.) Counsel represented that a copy would be produced for Defendants' review and at the suggestion of defense counsel, a break was taken for that specific purpose.[8] However, when the deposition resumed, Parkdale's counsel asserted

---

[8] After Wellman's counsel questioned the witness's preparation and ability to testify about the PSF prices, the following question prompted counsel's discussion of the document at issue:

**Q:** What price were you paying for polyester staple fiber type 472 in August of '99? Does this 44 cent price refresh your recollection that this is what you were paying?

**Murphy:** Just to refresh his recollection, I'm going to show him what it was. And you can have a copy of this as well.
**Fetterolf:** Well, actually, if you're showing it to him, I'd like a copy right now.
**Murphy:** Oh, no, we'll mark it.
**Fetterolf:** Okay. Great. Perfect.
**Murphy:** And you can see.
**Fetterolf:** This will make it a lot easier.
**Murphy:** Yeah.
**Fetterolf:** Do you have a copy of that?
**Murphy:** No.
**Fetterolf:** Well, let's go off the record and we'll make a copy.
**Murphy:** Fine.

(Thomas Dep., at 218-19.)

6

the document was protected by work product privilege and insisted instead on Defendants' production of individual invoices to be used in the examination. (Id., at 220, 231-32.) The one-page document, which was produced for *in camera* review at the hearing, is a simple chart reflecting old prices, new prices, price increases, and effective dates for those increases for Type 472 PSF purchases from Wellman between August 2, 1999 and April 3, 2000.[9] (6/23/05 Hr'g Tr., at 77-79.)

Mr. Murphy denied that he showed the witness the document on the day of the deposition. (Thomas Dep., at 220.) Parkdale does not dispute that Mr. Thomas reviewed the price chart prepared by counsel in advance of the deposition for purposes of testifying as the Rule 30(b)(6) designee for Parkdale. (Id., at 219-222.) Admittedly, the information within the chart was extrapolated from various invoices for the convenience of the witness. (Id.) While the factual information had already been produced to Wellman, it had not been produced in the same form and was not as readily accessible for defense counsel. Thus, notwithstanding any aspect of the document that may be deemed work product, the Court finds, in the interest of justice, Defendants are entitled to production of the price chart prepared by counsel.[10] To the extent Parkdale has prepared similar price charts or worksheets applicable to purchases of different types of PSF for the same purpose,

---

[9] There were actually two (2) versions of the same document produced for *in camera* review. One of the documents had been redacted to delete pricing information related to Parkdale's PSF purchases from DuPont. DuPont has settled all of its claims and is no longer a party to this litigation.

[10] Counsel for Parkdale represented during oral argument that absent the contentious nature of this litigation, counsel might not have asserted any work product privilege with respect to the document. (6/23/05 Hr'g Tr., at 78.)
This ruling is not intended as a finding that Parkdale's use of this specific document containing price information amounts to a blanket waiver of privilege on this subject or all attorney work product.

namely, for review and preparation of any Rule 30(b)(6) witness, Parkdale will be required to produce those documents as well.

### c. Defendants Are Entitled To Additional Rule 30(b)(6) Depositions Of One Or More Parkdale Representatives

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure,

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation . . . and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization.

FED. R. CIV. P. 30(b)(6).

An individual designated as a corporation's Rule 30(b)(6) witness essentially speaks for the corporation and binds the corporate entity on the specific topics they are designated to testify about. United States v. Taylor, 166 F.R.D. 356, 360-61 (M.D.N.C. 1996). A corporate entity has an affirmative duty to prepare the designated witness "so that they may give complete, knowledgeable and binding answers on behalf of the corporation." Taylor, 166 F.R.D. at 360-61 (*internal citations omitted*). "The duty the present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." Id. at 361.

Defendants' second amended deposition notice identified twenty-six (26) separate subjects that Parkdale's Rule 30(b)(6) designee should be prepared to testify about. (6/23/05 Hr'g Tr., at 75.) The notice identified topics including Parkdale's price history for PSF, including net price, rebates, communication with PSF suppliers, documents

8

produced, and the amount of PSF purchased. (Defs' Exhibit 1) According to Defendants, Parkdale had notice of the topics fourteen (14) months prior to the actual deposition. (Defs' Mem. In Supp., at 12.) Defendants seek a second Rule 30(b)(6) deposition on the grounds that the designated witness was not adequately prepared.

During his career with Parkdale, Thomas had a wide range of duties including PSF purchasing authority during the relevant time period.[11] In terms of preparing for the Rule 30(b)(6) deposition, Thomas testified that he reviewed some of his past notes and spoke with other Parkdale officers about specific topics.[12] (Thomas Dep., at 18-19.) In order to refresh his memory about Parkdale's relationship with Wellman, Thomas also reviewed some of the files that were gathered for purposes of document production. (Id., at 33.)

A review of Thomas' deposition reveals that there were subject areas where Thomas either did not have any information, could not remember, or possessed some information but was unable to explain.[13] (Thomas Dep., at 71, 100-101, 104, 108-111.) In

---

[11] Although not an all-inclusive list of Thomas' work experience with Parkdale, beginning in 1996, and continuing until January 2001, Thomas was the vice president of manufacturing services for Parkdale America. (Thomas Dep., at 26, 35, 37.) In that role, Thomas was responsible for purchasing PSF for all of Parkdale's plants. (Id., at 34, 36.) In addition, Thomas was responsible for overseeing human resources, engineering, safety, and the auditing of machinery. (Id., at 35.) Thomas later became an executive vice president of Parkdale America. (Id., at 26.) Thomas was responsible for a number of manufacturing plants. (Id., at 27.) Thomas' responsibilities included the quality, cost, safety and, presumably, most, if not all, other aspects of production for those plants. (Id.)

[12] Thomas spoke with Dan Wilson, present CFO, for approximately thirty (30) minutes to refresh Thomas' memory about how the contract between Parkdale and Fieldcrest Cannon / Pillowtex worked. (Thomas Dep., at 21.) Thomas also spoke with John Nims, his immediate supervisor and president of Parkdale Domestics, in a couple of quick phone calls to refresh his memory about KoSa's move of certain operations to Mexico. (Id., at 22.) Thomas also spoke with Dan Nation, president of Parkdale International, for approximately ten minutes on some of the same topics he broached with Nims. (Id., at 31.)

[13] Some of the questions asked referred to events occurring six (6) years prior.

some instances, Thomas testified or implied that other current or former Parkdale employees would be able to answer Defendants' questions. (Id., at 78-79, 83, 251-252.) In addition, Thomas could not fully explain the nature and terms of Parkdale's business relationship with certain customers. At least with respect to these areas, Thomas was not adequately prepared given his designation as Parkdale's sole corporate representative.[14] Accordingly, Parkdale must either designate one or more individuals possessing personal knowledge of the topics at issue or educate and prepare one or more witnesses who do not possess personal knowledge to speak on behalf of Parkdale.

### d. Parkdale Will Be Responsible For The Costs Associated With Additional Rule 30(b)(6) Depositions of Parkdale's Designee(s)

Rule 37 of the Federal Rules of Civil Procedure governs Defendants' motion for sanctions. Subsection (a) (4) provides in part:

> (A) If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court **shall**, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.
>
> ***
>
> (C) If the motion is granted in part and denied in part, the court **may** enter any protective order authorized under Rule 26(c) and may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in

---

[14] Parkdale took the position that some of the subject areas identified by Defendants in the deposition notice were beyond the scope of this litigation. To the extent Parkdale's position involved Pillowtex / Fieldcrest Cannon, the propriety of Defendants' questions with respect to Pillowtex are discussed, *infra*.

relation to the motion among the parties and persons in a just manner.

FED. R. CIV. P. 37(a)(4).

In moving for sanctions, Defendants accuse counsel for Parkdale of interrupting counsel's questioning to refresh the witness's memory, repeatedly instructing the witness not to answer, failing to adequately prepare the witness for the deposition as Parkdale's corporate designee, interposing speaking objections, coaching the witness, and proffering testimony himself on behalf of the witness.

Parkdale contends that, during Thomas' deposition, it was the uncertainty of the parties that contributed to many, if not all, of the difficulties during the deposition. Counsel emphasized during oral argument that Mr. Murphy advocated on behalf of his client consistent with the Court's February 5, 2004 Order. It is true that at the time of the Rule 30(b)(6) deposition, the Court's May 2005 Order, which authorized limited relief to Defendants, had not issued yet. Therefore, to the extent Mr. Murphy sought to enforce the Court's February 5, 2004, prohibiting "downstream discovery," at least some of his conduct may be considered appropriate.[15] (Thomas Dep., at 17, 54-57, 64, 81-82, 88-90, 202-206.)

A reading of the transcript does not corroborate Parkdale's representation that Mr. Murphy's conduct, as a whole, can be attributed to his uncertainty about the propriety of the questions posed. Aside from the parties' differences of opinion with respect to the

---

[15] During the hearing on June 23, 2005, several Plaintiffs' counsel representing individual Non-Class Plaintiffs came forward and volunteered that Mr. Murphy's conduct appeared justified given the nature of the questioning by Defendants, what Mr. Murphy knew about depositions of other corporate representatives immediately preceding Mr. Thomas' deposition, and the Court's earlier rulings. (6/23/05 Hr'g Tr., at 80-82.)

Although this Court does not condone any of this behavior, it is difficult to ascertain how much of Mr. Murphy's conduct can be attributed to zealous advocacy on behalf of his client and substantially justified efforts to stay within what he perceived to be the bounds of the topics this witness was designated for.

scope of Thomas' deposition, counsel conducted themselves in an argumentative and even childlike manner throughout much of the deposition. The transcript contains multiple challenges by attorneys for both parties to seek Court intervention or to pursue sanctions. (Thomas Dep., at 53, 58, 67, 82, 223-224.) The attorneys also made derogatory comments about the approaches both were taking during the deposition. (Id., at 74-75, 144-145, 231-232, 235.) By 10:33 a.m., Mr. Schulman was threatening to terminate the deposition. (Id., at 58.) The way the deposition concluded likewise speaks volumes. Based upon the hour, Mr. Murphy cut Wellman's counsel off mid-sentence as he attempted to ask his final question of the witness.[16] (Id., at 320.)

For the reasons already stated, the Court is not inclined to impose the full panoply of sanctions available under Rule 37. The Court will require Parkdale to be responsible for the Defendants' reasonable expenses, including attorney fees, associated with an additional Rule 30(b)(6) deposition.

---

[16] The exchange was as follows:

    **FETTEROLF:** One quick question. You previously testified that during the '99, 2000 time period, I'm using your words, you were the key contact person at Parkdale regarding the purchase of polyester staple fiber?
    **WITNESS:** Yes, sir.
    **FETTEROLF:** And you said that you – during the –
    **MURPHY:** Jon, the time.
    **FETTEROLF:** I've got one more question to ask him. During the '99 –
    **MURPHY:** No, time's over Jon.
    **FETTEROLF:** All right. Thank you.
    **MURPHY:** You're welcome.
    **SCHULMAN:** What comes around goes around.
    **MURPHY:** I'm sure.
    **SCHULMAN:** I mean, you know –
    **VIDEOGRAPHER:** One – do we want this on the record?
    **MURPHY:** No.
    **FETTEROLF:** We're done.

**e. If Parkdale Seeks Monetary Damages From Defendants Based Upon PSF Purchases Used To Produce PCY For Fieldcrest Cannon / Pillowtex, Defendants Are Entitled To Discovery On The Contractual Relationship Between Parkdale And Fieldcrest Cannon / Pillowtex**

Many of the questions Thomas could not answer related to Parkdale's PCY sales to the Fieldcrest Cannon / Pillowtex entity, an entity which is now defunct.[17] Mr. Murphy repeatedly objected to questions regarding Parkdale's PCY sales to Pillowtex on the basis that those questions were beyond the scope of the Court's February 5, 2004 Order denying Defendants' request for downstream discovery.

In terms of Parkdale's sales to Pillowtex, the only relevance the contractual arrangement and pricing of Parkdale's sales to Pillowtex has to this litigation is with respect to Parkdale's claim for damages against Wellman for its direct PSF purchases. Thomas testified about an atypical arrangement with Pillowtex referred to as a "conversion" deal. (Thomas Dep., at 71, 80, 86-87, 196.) This type of arrangement might occur when a customer required Parkdale to use a certain PSF manufacturer to produce the downstream product. (Id., at 67-70.) According to Thomas, Parkdale's purchases of Type 510 PSF from Wellman were artificially priced in that Pillowtex was actually the entity negotiating the PSF price with Wellman. (Id., at 84-85, 198.) Although Parkdale was invoiced at a certain price, depending on the size of the purchase from Wellman and the product sold, rebates or credits were then given. (Id., at 85, 91,196-199.) For example, if Parkdale sold product (PCY) to Pillowtex, Pillowtex paid the entire "artificial" price for the PCF. (Id., at 196-97.) If Parkdale sold to a customer other than Pillowtex, Parkdale received a rebate or credit from Wellman based upon the PSF price negotiated by Parkdale. (Id., at 198-99.)

---

[17] Fieldcrest Cannon / Pillowtex is not a party to this litigation.

Thomas testified that in order to determine the price for "non Pillowtex pounds" or Type 510 PSF, the credits and invoices for each would have to be compared. (Id., at 260-261.) Thomas could not testify about the rebates or credits during his deposition and admitted "[i]t would take some major digging to find out." (Id., at 263.)

It is true that Parkdale's sales to Pillowtex, products containing PSF, are considered "downstream" and, therefore, would ordinarily be governed by the Court's February 5, 2004 ruling. Absent these unique circumstances and /or an indirect purchaser claim by Pillowtex, Defendants would not be entitled to discovery with the respect to Parkdale's relationship or sales to Pillowtex. However, to the extent Parkdale is asserting it is entitled to damages from Wellman *based upon Type 510 PSF purchases where those prices were negotiated by Pillowtex*, Defendants are entitled to discovery on the nature of the contractual relationship between Parkdale and Pillowtex. The same is true for any other downstream entity that negotiated directly its own PSF price with one or more of the PSF manufacturer Defendants in this action.

### III.  Order

**IT IS HEREBY ORDERED** that Defendants' Motion To Compel is **GRANTED in part** and **DENIED in part**. Specifically, Defendants' motion is granted to the extent it seeks production of any document prepared by counsel for Parkdale for purposes of refreshing the memory of its Rule 30(b)(6) witness prior to or during deposition testimony. Defendants' motion for leave to notice and conduct a second Rule 30(b)(6) deposition, limited to a time period of four (4) hours, is likewise granted. Defendants' motion is denied in all other respects.

**IT IS FURTHER ORDERED** that Defendants' Motion For Sanctions is **GRANTED in part and DENIED in part.** Defendants' motion for monetary sanctions is denied except that Parkdale will be required to bear the costs and attorney fees associated with conducting the additional Rule 30(b)(6) deposition(s). The amount of such costs and fees is subject to approval by the Court for reasonableness and propriety in the context of the discussion herein.

**IT IS FURTHER ORDERED** that Parkdale Mills' Motion For Protective Order is hereby **GRANTED**. Defendants are hereby precluded from seeking further discovery, by any means, into the alleged PCY conspiracy and its purported effect on any aspect of this case.

**Signed: September 7, 2005**

Richard L. Voorhees
United States District Judge