UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| IN RE POLYESTER STAPLE ANTITRUST LITIGATION | ) ) ) | MDL DOCKET NO: 3:03CV1516 ALL CASES |

**THIS MATTER** comes before the Court on 1) "Non-Class Plaintiffs' Motion For Relief And Sanctions Against Defendants CNA Holdings, Inc. and Celanese Americas Corp.," filed March 28, 2006 (Doc.#391); 2) Non Class Plaintiffs' submission of attorneys' fees and costs, filed June 27, 2006 (Doc.#439); and 3) Non-Class Plaintiffs' Related Letter / Motions For Additional Sanctions (Doc. #476); and all related filings.[1]

Hearings were held on June 6, 2006, July 28, 2006, and October 25, 2006. Both parties were given an opportunity to introduce evidence and present oral arguments on behalf of their respective clients. For the reasons stated herein, the Court will <u>grant in part</u> and <u>deny in part</u> Non Class Plaintiffs' ("NCPs'") Motion For Additional Sanctions against Hoechst Celanese. The Court reserves ruling on whether or not imposition of additional sanctions may be warranted in the future.

**1. Hoechst Celanese Sanctioned In The Amount Of $113,524.00 For Attorneys' Fees & Expenses Incurred Through June 6, 2006 By Non Class Plaintiffs In Connection With Motion To Compel**

The Court granted Non Class Plaintiffs' first motion for sanctions orally on June 6, 2006, and requested an itemization of attorneys' fees and costs from Plaintiffs. The Court reserved ruling on the exact amount of monetary sanction to be imposed against Hoechst Celanese. NCPs request reimbursement in the amount of **$113, 524.50**[2] for defending

---

[1] In addition to the parties' previous submissions related to Non Class Plaintiffs' original motion for sanctions, NCPs submitted a supplemental letter brief and multiple exhibits the day prior to the October 25, 2006 hearing. At Hoechst Celanese's request, Hoechst was allowed to respond to NCPs' filing and did so on October 30, 2006. (Doc. #481) Both parties then independently submitted additional letter briefs from November 2, 2006, through November 8, 2006. (Docs. #485, ##487-89)

[2] The total breaks down as follows: **Nexen Pruet - $92,235.55**, $81,616.50 (fees) plus $10,619 (expenses); and **Balch & Bingham - $21,288.95**, $17,708.50 (fees) plus $3,580.45

1

against Hoechst's Motion For Protective Order and preparation of NCPs' own Motion To Compel. On July 28, 2006, more detailed records were produced for *in camera* review by counsel for NCPs. The Court has reviewed the records and considered Hoechst Celanese's opposition, and makes the following findings:

- Prior to moving to compel, NCPs made a good faith effort to obtain the discovery sought without court action.
- The scope of NCPs' request is not problematic because NCPs filed the same memorandum of law in support of their opposition to Defendant's motion for protective order and motion for sanctions. Therefore, entries for attorney / paralegal time dedicated to research, drafting, and editing of all related documents are within the scope of the Court's ruling regarding sanctions.
- David Eddy of Nexen Pruet is the NCPs' Liaison Counsel. In that role, Eddy is tasked with relaying and gathering information to and from all of the NCPs as well as coordinating action (i.e., joint filings) amongst NCPs, if appropriate.
- The first round of correspondence and briefing related to this motion lasted approximately seven months, from December 2005 through June 2006.
- Given the complexities of this particular case, and the reluctance on the part of Hoechst Celanese to comply with the discovery requests of NCPs during the relevant time period, the attorney fees requested are reasonable.
- Hoechst Celanese concedes it should be responsible for the fees and costs associated with NCPs' travel to New York in April 2006 to review Hoechst Celanese's potentially responsive documents. The New York trip significantly drove up NCPs' fees and costs.
- Hoechst Celanese's conduct was not "substantially justified" and no other circumstance renders this award unjust.

---

(expenses).

Therefore, NCPs will be awarded reimbursement for the full amount of attorneys' fees and costs incurred in connection with the motion to compel. FED. R. CIV. P. 37(a)(4)[3].

**2. Hoechst Celanese Has Not Satisfied All Of Its Discovery Obligations**

**a. NCPs' Request For Additional Rule 30(b)(6) Depositions Of Hoechst Witnesses Directly Responsible For 2002 Document Search**

NCPs request permission to conduct at least four (4) additional depositions of Hoechst Celanese witnesses directly and personally responsible for the document search initiated in 2002. According to NCPs, these individuals are Chris Gannon, Ed Collins, Erin Brennan and Arlene Patz. While Peter Broussard and Michael Reap provided some insight into the nature of the search for responsive documents conducted by Hoechst Celanese, neither could testify about the contents or substantive nature of the information produced. (Broussard Dep., at 65, 129; Reap Dep., at 27-28, 71-72, 139.) In addition, Reap testified that he was in-house counsel responsible for verifying Hoechst Celanese's responses to discovery requests in MDL 1516 as well as the Arteva / KoSa action in the Southern District of New York. (Reap Dep., at 112.) Reap admitted that in December 2004 Hoechst Celanese produced approximately 33,500 pages of polyester staple fiber documents on CDs to Arteva / KoSa in the New York action that were not produced in this action until 2006. (Reap Dep.,at 122-125.) Reap could not reconcile this inconsistency in production or explain why Hoechst never supplemented its responses to Plaintiffs'

---

[3] Rule 37(a)(4)(A) governs expenses and sanctions related to motions to compel:

> If the motion [to compel] is granted or if the disclosure or requested discovery is provided after the motion was filed, the court **shall**, after affording an opportunity to be heard, require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response or objection was substantially justified, or that other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(a)(4)(*emphasis added*).

discovery requests after December 2004. Id.

Similar questions remain regarding the 9-10 boxes of documents from Hoechst's North Carolina facilities (i.e., the "Gannon" or "Mabon" boxes). It is unclear whether these boxes of documents were ever given to outside counsel and why these documents were not produced in this action before June 6, 2006. Given the history of nondisclosure, it is not unreasonable for NCPs to continue to pursue these topics. This request will be granted.

**b. Miscellaneous Issues Concerning The Production Of Remaining Responsive Documents, Computer Data**

The parties disagree as to the methods for searching computerized data and microfilm / microfiche, as well as the form of production for responsive materials.[4] More specifically, one of the remaining disputes involves the search of Hoechst Celanese's servers for data related to polyester staple fiber. According to Hoechst, the NCPs' search terms are too broad. Hoechst predicts that if the search terms are not altered, as much as 95% of the data will be ultimately deemed non-responsive. The parties have not been able to agree upon any other mechanism for modifying the search, delaying the production of this computerized data for several months.

With respect to the microfilm / microfiche, the parties disagree about almost every aspect of production, including who should be responsible for inspecting or reviewing the documents, where inspection should take place, the form of production, and which party should bear the costs.

Rule 34 of the Federal Rules of Civil Procedure provides:

> A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.

---

[4] The information at issue falls into these categories: 1) 200 rolls of microfilm / microfiche identified by Hoechst Celanese on August 11, 2006, containing "letters" and "reports" and an accompanying 169-page index; and 2) server data from 150 document servers (both retired servers and active servers). According to NCPs' November 2, 2006 filing, since October 25, 2006, Hoechst has produced responsive documents from 76 rolls of microfilm containing expense reports for Tom Nixon.

4

FED. R. CIV. P. 34(b). Under Rule 34, the party who produces the documents (Hoechst Celanese) merely makes them available to the requesting party (NCPs) for inspection. As long as the documents are organized in some fashion, Rule 34 also authorizes the form of production as "kept in the usual course of business." Id.

In the present context, however, conventional procedures offer only limited guidance. The Manual For Complex Litigation comments on some of the difficulties that arise when discovery of computerized data is sought and explains -- "In many cases, the volume of computer data produced will far exceed the volume of paper documentation, and conventional procedures for "inspection and copying" of computer data are not applicable." MANUAL FOR COMPLEX LITIGATION (FOURTH) §11.443 (2004). Indeed, the amount of data contained on a single roll of microfilm could equal thousands of pages of documents. Complicating matters further, the microfilm / microfiche is currently located in Houston, Texas. Hoechst's proposal is for NCPs to send a team of individuals to Texas to review the data in a public library. Both parties express concern about their clients being saddled with the costs associated with such a tedious and time-intensive inspection of documents.

Because Hoechst Celanese bears the burden of identifying its own potentially responsive documents and making them reasonably available to NCPs, the bulk of the work falls on Hoechst. MANUAL FOR COMPLEX LITIGATION (FOURTH) §11.446 (2004) ("In a computerized environment, the relative burdens and expense shift dramatically to the responding party.") Absent an agreement to the contrary,[5] Hoechst shall conduct the review of any and all potentially responsive data, no matter what form (including microfilm and microfiche), for documents and produce any responsive materials in the form requested by NCPs no later than November 30, 2006. The Court will require the parties

---

[5] Generally, the review of computerized data triggers privacy concerns and the need to protect trade secret and privileged information. Neither party has voiced this type of concern. Rather, it seems that the current location of the microfilm / microfiche in Houston, Texas is the most significant obstacle to NCPs conducting their own review. If so, and time permitting, the parties should consider a temporary transfer of the potentially responsive data to a local site. In terms of costs, the parties, who both will bear a portion of this burden, are encouraged now to complete the task in the most efficient manner.

to split evenly the actual production costs (i.e., copying expenses) - for all computerized or "e-data" that has been produced since June 6, 2006, as well as for any remaining production.

### 3. The Court Will Reserve Ruling On Rule 37(c)[6] Sanctions

As of June 6, 2006, all that was known was 1) that Hoechst Celanese had produced only 220 pages of documents during three years of litigation; and 2) as recently as March 2006, Hoechst Celanese had recently discovered potentially responsive documents (as many as 165,000 pages) in New York that had not been produced. There was also conflicting evidence in the record regarding the actual timing of Hoechst's own discovery of the existence of potentially responsive documents. It became evident that either Hoechst's in-house counsel or outside litigation firm was simply wrong and that these documents, and any others that might exist, may be material to Non Class Plaintiffs' motion.

Months later, Hoechst Celanese has engaged in a massive production of discovery materials that has extended well beyond the 165,000 pages known about in June 2006.[7] As a result, Non Class Plaintiffs have learned much about Hoechst's document search.

---

[6] Subsection (c)(1) of Rule 37 governs situations where a litigant has failed to disclose information or produced false or misleading disclosures. Rule 37(c)(1) provides for a variety of sanctions in the discretion of the trial judge:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

FED. R. CIV. P. 37(c)(1).

[7] The fact that Hoechst has finally, and apparently in good faith, facilitated a document search and produced significant discovery to NCPs will be factored into the Court's ultimate ruling regarding sanctions.

For instance, Peter Broussard's testimony confirmed that Hoechst elected to limit its search for responsive documents in the civil litigation to its 2002 search prompted by DOJ's informal request to produce expense reports. Broussard similarly confirmed in his testimony that "mistakes" were made in counsel's representations to the Court regarding satisfaction of Hoechst Celanese's discovery obligations and that "poor judgment" was exercised by previous counsel. However, discovery is not yet complete and factual questions remain. Notwithstanding apologies by newly retained counsel for Hoechst Celanese, and Hoechst's attempts thus far to remedy its previous non disclosures, the allegations made against Hoechst are most disturbing. The Court does not take lightly the allegation that material false written and oral representations were knowingly and intentionally made to the Non Class Plaintiffs and to this Court. Consequently, when the Court first announced its decision to compel production and impose sanctions against Hoechst, the undersigned expressly stated that there would be at least two stages of the ruling. (June 6, 2006 Hr'g Tr. at 45.) It is impossible to fully measure the impact of Hoechst's conduct until all of the discovery is taken and the parties have a chance to digest the meaning of said discovery for purposes of their respective cases. In other words, the Court will not attempt prematurely to quantify the extent of prejudice which Hoechst Celanese's discovery abuse has caused to Non Class Plaintiffs. As the case proceeds and facts develop, the Court will evaluate the need for additional sanctions.[8]

Finally, the Court dispenses with the parties' disagreement regarding what constitutes "new" sanctionable conduct, presumably meaning what was discovered after June 6, 2006. The information discovered <u>after</u> June 6, 2006, must be considered in light of Non Class Plaintiffs' original motion for sanctions. The Court likewise declines to engage in a debate regarding whether the materials produced by Hoechst to date are inculpatory or exculpatory as most of these issues are factual and will be posed to the jury at trial.

---

[8] This should not be construed as an invitation to the parties to bombard the Court with letter briefs / status reports, as has been the recent practice.

**IT IS, THEREFORE, ORDERED THAT:**

1) Non Class Plaintiffs' Motion For Additional Sanctions (Doc. #476) is **GRANTED in part** and **DENIED in part** consistent with the instant Order;

2) Hoechst Celanese shall pay a total of **$113,524.50** in attorneys' fees and costs to Non Class Plaintiffs pursuant to the Court's June 6, 2006 oral order awarding monetary sanctions against Hoechst as a result of Plaintiffs' Motion To Compel Production. Payment of that sum is due in full <u>on or before December 11, 2006</u>.

3) Hoechst Celanese shall review / inspect the remaining rolls of microfilm at its own expense and produce all responsive documents to Non Class Plaintiffs <u>on or before November 30, 2006</u>. Non Class Plaintiffs may designate the preferred form of production but will be required to share with Hoechst Celanese the costs (50% / 50%) associated with copying responsive documents in whatever form they are produced.

4) Using the search terms agreed to by NCPs, Hoechst Celanese shall likewise complete its search for responsive documents from its document servers <u>on or before November 30, 2006</u>. Again, Non Class Plaintiffs may designate the preferred form of production but will be required to share with Hoechst Celanese the costs (50% / 50%) associated with copying responsive documents in whatever form they are produced.

5) Non Class Plaintiffs will be allowed to conduct follow-up fact discovery, including depositions, after receipt of the discovery materials from Hoechst Celanese. Fact discovery is only available to Non Class Plaintiffs and must be completed <u>by January 19, 2007</u>.

6) Hoechst Celanese shall designate and produce one or more Rule 30(b)(6) witnesses who can provide "complete" and "knowledgeable" testimony regarding Topics 1-4 of Non Class Plaintiffs' March 1, 2006 Rule 30(b)(6) Notice. If specifically requested by Non Class Plaintiffs, Hoechst Celanese shall produce and make available the following individuals for deposition: Chris Gannon, Ed Collins, Erin Brennan and Arlene Patz.

7) Hoechst Celanese shall also be required to reimburse Non Class Plaintiffs'

counsel a portion of their reasonable fees and expenses incurred in connection with Non Class Plaintiffs' Motion For Additional Sanctions. Hoechst Celanese will not be required to reimburse Non Class Plaintiffs for the costs incurred in submitting each and every letter brief filed with the Court since early August 2006. Non Class Plaintiffs should limit their itemization of fees and costs accordingly and submit the request to the Court <u>no later than December 10, 2006</u>.

8) The **REVISED SCHEDULE** with respect to the NCPs and the Hoechst Celanese entities is as follows:

- <u>Final production</u> of discovery by Hoechst Celanese to NCPs due on or before **November 30, 2006**.
- NCPs may conduct "follow-up" discovery of Hoechst Celanese through **January 19, 2007**.
- Discovery deadline for parties to recently filed actions, Civil Docket Nos.: 3:06CV387; 3:06CV390, is **February 23, 2007**.
- Responses to summary judgment motions by NCPs Coats & Gulistan due on or before **February 9, 2007**.
- Dispositive motions deadline: **March 9, 2007**; responses due: **March 30, 2007**; and reply briefs due **April 11, 2007**.
- Expert designations (all parties) due on or before **March 30, 2007**.
- Expert rebuttal designations (all parties) due on or before **April 11, 2007**.

**SO ORDERED.**

Signed: November 16, 2006

Richard L. Voorhees
United States District Judge

9