# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | | |
|---|---|---|
| IN RE POLYESTER STAPLE ANTITRUST LITIGATION | ) ) ) | **MDL DOCKET NO: 3:03CV1516 ALL CASES** |

**THIS MATTER** comes before the Court on a "Motion To Quash Plaintiffs' Subpoena and Motion For A Protective Order," filed on behalf of Defendant Tom Nixon ("Nixon"). (Documents ##526-528) Nixon seeks to quash a subpoena issued by a group of Non-Class Plaintiffs noticing his deposition for February 23, 2007, in Charlotte, North Carolina.

## A. Applicable Standards / Fed. R. Civ. P. 26(c)[1] and 45(c)

Rule 45(c) governs the instant motion and provides as follows:

**(c) Protection of Persons Subject to Subpoenas.**
**(1)** A party or an attorney responsible for the issuance and service of a subpoena **shall take reasonable steps to avoid imposing undue burden** or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty . .

\*\*\*
**(3)(A)** On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

**(iv)** subjects a person to undue burden.

Fed. R. Civ. P. 45(c)(1) and (c)(3)(A)(iv).

---

[1] Rule 26(c), entitled "Protective Orders," provides:

Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .

## B. Discussion

Nixon, a former Hoechst executive (and later Arteva / KoSa executive), was originally named in three individual actions consolidated for pretrial proceedings in the above-captioned case, In Re Polyester Staple Antitrust Litigation, MDL 1516.[2] While with Hoechst, Nixon served for a period of time as the Director Of Sales and Marketing for North American polyester staple fiber. Nixon worked closely with Troy Stanley during the relevant time period and reported to Grover Smith, Vice President and General Manager of Polyester Staple North America.

Nixon was deposed in October 2005 for a seven-hour period. Counsel for Non-Class Plaintiffs, Class Plaintiffs, and Defendants participated and examined Nixon.[3] Counsel for the various parties were required to share and allocate time during Nixon's deposition. At the conclusion of Nixon's deposition, one of the attorneys noted for the record that he was "not done." (Nixon Dep. at 332.) No formal request was made with the Court for additional deposition time. Plaintiffs' claims against Nixon have since been dismissed with prejudice.

In the Fall of 2006, two new civil actions were commenced by different Non-Class Plaintiff groups totaling twenty-five Plaintiffs.[4] Each of the new actions name the Hoechst Celanese entities as Defendants and allege facts similar to those included within the three original complaints noted herein. However, the new Complaints also allege that Hoechst, after the sale of its polyester staple

---

[2] *See* 3:03CV560 (WestPoint Stevens); 3:04CV197 (Avondale Mills); and 3:03CV296 (Mount Vernon Mills).

[3] On behalf of the Non-Class Plaintiffs - as the Non-Class Plaintiff group was then comprised - Attorneys Jeffrey Cashdan, David Eddy and Steven Murphy examined Nixon.

[4] *See* 3:06CV387 (Burlington Industries, Inc., et al) and 3:06CV390 (Parkdale Mills, Inc., et al). Several of these Non-Class Plaintiffs were involved in these consolidated pretrial proceedings earlier. The majority of these parties, however, are new to this multidistrict litigation. For example, Plaintiffs identify Shaw Industries, Inc. (carpet manufacturer), as a new party with an interest in examining Nixon on topics not previously addressed in the earlier deposition (i.e., polyester staple fiber manufactured for use in carpet).

fiber assets to Arteva / KoSa, continued to engage in the manufacture of polyester staple fiber at its Canadian plant located in Millhaven, within the province of Ontario ("Millhaven"). (Burlington Industries' Am. Compl., ¶¶29, 30; Parkdale Mills' Compl., ¶37) Plaintiffs contend that the polyester staple fiber manufactured in Millhaven was marketed and sold by Arteva / KoSa in the United States at artificially inflated prices pursuant to the alleged price-fixing scheme. Thus, certain Non-Class Plaintiffs allege that Hoechst continued to participate and benefit from the charged conspiracy beyond the sale of its business to Arteva / KoSa and at least through December 1999 and possibly as late as 2001. (Burlington Industries' Am. Compl., ¶¶29, 30, 49; Parkdale Mills' Compl., ¶2) In addition, Plaintiffs state that Nixon was "responsible for overseeing and managing sales of PSF to <u>all</u> of the fine denier and carpet PSF customers" who are parties to these new actions. (NCPs' Response at 3.)

Despite Nixon's dismissal from the case, more recent developments in the case weigh in favor of allowing Non-Class Plaintiffs to depose Nixon. One such development is the belated production of documents from Hoechst Celanese ultimately compelled by this Court after months of discovery disputes.[5] None of the Non-Class Plaintiffs has had an opportunity to examine Nixon about the bulk of documents produced by Hoechst. Similarly, after moving to compel production of one or more Hoechst corporate representatives for purposes of Rule 30(b)(6), Plaintiffs have also now deposed Hoechst's representative(s). Plaintiffs contend that the testimony provided by Hoechst representative Walt Goldman, and others, gives rise to their request to depose Nixon on additional topics. (NCPs' Response at 4.)

---

[5] At the time Nixon was deposed in October 2005, Hoechst had only produced 220 pages of documents, many of which were expense reports of Grover Smith. The number of documents that have been produced to date by Nixon's former employer Hoechst is in the hundreds of thousands.

The thrust of Nixon's motion to quash is that Nixon has satisfied his obligations under the discovery rules and should not have to appear for a second deposition. Nixon asserts that requiring him to prepare and appear for deposition more than a year after the October 2005 deposition creates an "undue burden." Nixon further contends that he should not be penalized for his former employer's discovery deficiencies. Given the current posture of these consolidated multidistrict proceedings, the arguments advanced by Nixon are not persuasive.

For the reasons stated herein, Non-Class Plaintiffs' justifications for deposing Nixon outweigh the purported undue burden on the witness.[6]

**C. Order**

**IT IS HEREBY ORDERED** that the Motion To Quash Subpoena and Motion For Protective Order are both **DENIED**. Accordingly, Tom Nixon <u>shall</u> appear 1) as directed in the respective deposition notice; or 2) at an alternative date and time mutually agreed upon by the parties, but in any event <u>no later than March 16, 2007</u>.[7]

Signed: February 16, 2007

Richard L. Voorhees
United States District Judge

---

[6] Whether the February 2007 deposition is considered a "new" deposition or an extension or continuation of the October 2005 deposition, there are sufficient fairness concerns to require Nixon to appear for further examination. *See* FED. R. CIV. P. 30(d)(2).

[7] The current merits discovery deadline is February 23, 2007. However, the Court is also considering a pending motion for an adjustment to the existing schedule relevant to these parties. In any event, in order to accommodate the witness's schedule (or counsel's schedule), the Court is willing to extend the deadline for this limited purpose.