# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| IN RE POLYESTER STAPLE ANTITRUST LITIGATION ) ) ) | MDL DOCKET NO: 3:03CV1516 ALL CASES |

**THIS MATTER** comes before the Court on a "Motion To Quash Plaintiffs' Subpoena," filed on behalf of David Whitley ("Whitley") and Jim Casey ("Casey"). (Documents ##525, 529) Whitley and Casey seek to quash a subpoena issued by a group of Non-Class Plaintiffs noticing depositions for February 15, 2007 and February 23, 2007, in Charlotte, North Carolina.

## A. Applicable Standard / FED. R. CIV. P. 26(c)[1] and 45(c)

Rule 45(c) governs the instant motion and provides as follows:

**(c) Protection of Persons Subject to Subpoenas.**

**(1)** A party or an attorney responsible for the issuance and service of a subpoena **shall take reasonable steps to avoid imposing undue burden** or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty . .

\*\*\*

**(3)(A)** On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

**(iv)** subjects a person to undue burden.

FED. R. CIV. P. 45(c)(1) and (c)(3)(A)(iv).

---

[1] Rule 26(c), entitled "Protective Orders," provides:

Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .

1

## B. Discussion

At the outset of this multidistrict litigation, Wellman Incorporated ("Wellman") was named as a Defendant by both Class Plaintiffs and Non-Class Plaintiffs. By December 2005, Wellman had reached agreements with both plaintiff groups resolving the claims against it.

David Whitley is a current Wellman employee. Whitley was originally named in three (3) individual actions but has since been voluntarily dismissed in each case.[2] During the relevant time period, Whitley was a Business Manager within Wellman's polyester staple fiber division. Whitley is described by Plaintiffs as Troy Stanley's "Wellman counterpart."

Jim Casey served as President of Wellman's polyester staple fiber business during the relevant period. Casey was never named a Defendant but was identified, via discovery, as one of several individuals Wellman knew may possess knowledge relevant to these claims.

Neither of the witnesses was deposed before the claims against Wellman were dismissed. According to Wellman, Hoechst Celanese and its *present* counsel[3] contemplated deposing Whitley but ultimately declined to do so. Hoechst Celanese relied instead on an affidavit submitted by Whitley at Hoechst Celanese's request. Based on this decision, Wellman argues that Hoechst Celanese waived its right to depose Whitley and Casey.

In the Fall of 2006, two (2) new civil actions were commenced by different Non-Class Plaintiff groups totaling twenty-five (25) Plaintiffs.[4] Each of the new actions name the Hoechst

---

[2] *See* 3:04CV197 (Mount Vernon Mills); 3:03CV296 (Avondale Mills); and 3:04CV506 (Coats American, Inc.).

[3] In light of the history of this case, it is significant to the Court that Hoechst Celanese's current counsel with the law firm of Kasowitz, Benson, Torres, and Friedman, as opposed to Kaye Scholer, took part in, or was at least aware of, the decision to not depose David Whitley.

[4] *See* 3:06CV387 (Burlington Industries, Inc., et al) and 3:06CV390 (Parkdale Mills, Inc., et al). Several of these Non-Class Plaintiffs were involved in these consolidated pretrial proceedings earlier. The majority of these parties, however, are new to this multidistrict litigation.

Celanese entities as Defendants and allege facts similar to those included within the three (3) original complaints noted herein.

Many of the facts alleged with respect to Hoechst and Wellman are not "new" although Hoechst's potential exposure may be greater than originally alleged.[5] Plaintiffs specifically allege that Wellman, through its employees and agents, was one of the entities involved in the conspiracy during its earliest stages, or as early as the mid-1990's. (Burlington Industries' Am. Compl., ¶¶32, 52) Plaintiffs rely heavily on the allegations made by Koch Industries in the related action pending in the Southern District of New York. (*Koch Industries, et al. v. Hoechst AG, et al.*, SDNY Civil Action No.: 03CV8679) Plaintiffs allege that Hoechst, Wellman, and the other purported co-conspirators fraudulently concealed their activities from Plaintiffs and other polyester staple fiber purchasers. (Burlington Industries' Am Compl., ¶¶57-64; Parkdale Mills' Compl., ¶¶52-56)

Not unlike other Plaintiffs, the Burlington Industries and Parkdale Mills Plaintiffs base their claims in large part on Troy Stanley's admissions, particularly with respect to Wellman's fine denier polyester staple customers. (Hoechst Celanese's Exh. 4 at 14-17; Exh. 5 at 12-14.) Plaintiffs also cite to Walt Goldman's deposition testimony in support of the claims against Hoechst Celanese. (Hoechst Celanese's Exh. 4 at 24; Exh. 5 at 14, 18.) Goldman, former Market Coordinator for Floor Covering Sales for Hoechst (and later Arteva / KoSa), was deposed on March 16, 2006.

---

[5] As explained in the February 16, 2007 Order, the new Complaints allege that Hoechst, after the sale of its polyester staple fiber assets to Arteva / KoSa, continued to engage in the manufacture of polyester staple fiber at its Canadian plant located in Millhaven, within the province of Ontario ("Millhaven"). (Burlington Industries' Am. Compl., ¶¶29, 30; Parkdale Mills' Compl., ¶37) Plaintiffs contend that the polyester staple fiber manufactured in Millhaven was marketed and sold by Arteva / KoSa in the United States at artificially inflated prices pursuant to the alleged price-fixing scheme. Thus, certain Non-Class Plaintiffs allege that Hoechst continued to participate and benefit from the charged conspiracy beyond the sale of its business to Arteva / KoSa and at least through December 1999, and possibly as late as 2001. (Burlington Industries' Am. Compl., ¶¶29, 30, 49; Parkdale Mills' Compl., ¶2)

3

As for Hoechst Celanese's request to depose David Whitley, Burlington Industries, in its January 4, 2007 responses to interrogatories, points to the March 27, 2006 Affidavit of David Whitley obtained from Hoechst Celanese as evidence supportive of its claim that an "overarching" price-fixing conspiracy existed.[6] Plaintiffs claim Whitley admits in his affidavit "recurring telephone calls and meetings between Whitley and Stanley during 1994-1998."[7] (Hoechst Celanese's Exh. 4 at 24.) (*emphasis added*). According to Parkdale Mills, Stanley (on behalf of Hoechst Celanese) and Whitley (on behalf of Wellman) continued to conspire through January 2001. (Hoechst Celanese's Exh. 5 at 12-13.)

With respect to James Casey, Parkdale's responses to interrogatories, served on Hoechst Celanese on January 9, 2007, note the deposition testimony of Bill Harris, Grover Smith's superior while at Hoechst, in support of its allegation that Harris met with Casey in 1997. (Hoechst Celanese's Exh. 5 at 14.) Casey was also referenced in some of the documents recently produced by Hoechst Celanese.

Hoechst Celanese has been on notice since 2005 that Whitley and Casey likely possessed information relevant to the claims against it. Notwithstanding, Hoechst Celanese should have an opportunity to discover what, if anything, Whitley and Casey know about: 1) Troy Stanley's testimony; 2) Bill Harris' deposition testimony; and 3) any price-fixing or customer allocation

---

[6] Whitley prepared the affidavit at Hoechst Celanese's request. (Whitley Aff., ¶2) As a result, on February 19, 2007, the Burlington Industries Plaintiffs moved to compel Hoechst Celanese to produce any draft affidavits or underlying documents exchanged prior to, or in conjunction with, execution of Whitley's affidavit. (Document #30) Plaintiffs' motion to compel is not ripe for disposition as of the filing of this Order.

[7] While Whitley's one-page, five-paragraph affidavit admits multiple telephone and face-to-face communications occurred with Troy Stanley, Whitley expressly and unequivocally denies membership in any conspiracy to fix prices, allocate customers, or rig bids. (Whitley Aff., ¶4) Whitley avers he is unaware of any such agreements by other Wellman employees. (Id.) Whitley also denies making any effort to conceal the communications he had with Stanley. (Whitley Aff., ¶5)

4

conspiracy with respect to the new parties in the two new actions. In other words, Hoechst Celanese is entitled to seek discovery from these witnesses for the purpose of defending against the <u>new</u> actions.[8] For this reason, the Court will allow Hoechst Celanese to depose the witnesses.

## C. Order

**IT IS HEREBY ORDERED** that the Motion To Quash Subpoena is **DENIED** with respect to both witnesses. Accordingly, David Whitley and Jim Casey <u>shall</u> appear for deposition by Hoechst Celanese at a date and time mutually agreed upon by the parties, but in any event <u>no later than March 16, 2007</u>.[9]

This the 2nd day of March, 2007.

*/s/ Richard L. Voorhees*

**RICHARD L. VOORHEES**
**UNITED STATES DISTRICT JUDGE**

---

[8] Wellman, on behalf of Whitley and Casey, concedes Hoechst Celanese is entitled to seek discovery and depose witnesses that possess relevant information to the actions initiated by Burlington Industries and Parkdale Mills. Despite Wellman's argument regarding waiver, as a practical matter, it would be futile to order Hoechst Celanese to limit its examination of the witnesses to the claims alleged within the two (2) new actions commenced by Burlington Industries and Parkdale Mills in that the new actions allege many, if not all, of the same facts.

[9] Any legal argument(s) raised by either party and not discussed herein is deemed to be without merit.

5